## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

GLENDORA D. BARKSDALE,      :
                                    :
        Plaintiff,          :
                                    :     C.A. No.
     v.                     :     TRIAL BY JURY DEMANDED
                                    :
AMAZON.COM.DEDC LLC,        :
                                    :
        Defendant.       :

### COMPLAINT

### I.    THE PARTIES

1.    Plaintiff Glendora D. Barksdale is a resident of the State of Delaware who resides at 202 Taylor Road, Wilmington, Delaware 19804.

2.    Defendant Amazon.com.dedc LLC ("Amazon") is a domestic corporation which may be served by serving its registered agent at Corporation Service Company, 251 Little Falls Drive, Wilmington, Delaware 19808.

3.    At all times relevant hereto, Amazon operated a Distribution Center at 560 Merrimac Avenue, Middletown, Delaware  19709.

4.    At all times relevant hereto, Amazon acted in its capacity as an "employer" within the meaning of the Americans With Disabilities Act, 42 U.S.C. §12111(5).

5.    At all times relevant hereto, Amazon acted through its employees, servants, agents, or apparent agents such that it is liable for their conduct pursuant to the doctrine of *respondent superior*.

### II.    JURISDICTION AND VENUE

6.    Plaintiff brings this action pursuant to the employment provisions of the Americans with Disabilities Act, 42 U.S.C. §§12101-12111, 12203 ("ADA").

1

7.      Jurisdiction is conferred upon this Court pursuant to 28 U.S.C. §1331a). This Court has supplemental jurisdiction over the claims brought pursuant to Delaware statutory law pursuant to 28 U.S.C. §1367.

8.      Venue lies in the federal District of Delaware as all conduct forming the basis of Plaintiff's claims took place within the boundaries of this District.

9.      Plaintiff timely filed a Charge of Discrimination alleging disability discrimination in the Delaware Department of Labor ("DDOL") and the United States Equal Employment Opportunity Commission ("EEOC") on February 22, 2017.

10.     On October 23, 2017 Plaintiff received a Final Determination and Right to Sue Notice from the DDOL.  On November 3, 2017 Plaintiff received a Notice of Right to Sue from the EEOC.

11.     Plaintiff has exhausted all administrative remedies required by the applicable statutes.

### III.   FACTUAL BACKGROUND

12.     Plaintiff is physically and cognitively disabled.

13.     On or about April 4, 2004 Plaintiff suffered a blunt force trauma to her head and spine.  This event triggered a cerebral vascular accident that partially paralyzed her right side and affected her vision.  An injury to her brain also caused permanent cognitive deficits to her memory, concentration, and ability to focus on tasks.  As a result of these injuries and deficits Plaintiff was approved for disability status through the Social Security Administration and has remained on disability status up to the present time.

14.     Plaintiff remained out of work until 2015 when she attempted to return to work for the first time since the 2004 accident.  On or about October 20, 2015 Plaintiff

took a job position as a laborer for a company named Countrywide. She was assigned the task of cleaning out old supermarkets, but the job lasted only a few weeks. Additionally, Plaintiff obtained a job position through Integrity Staffing Solutions, a temporary employment agency, wrapping gifts at Amazon's Distribution Center in Middletown, Delaware during the 2015 holiday season.

15.    On or about February 6, 2016, Plaintiff contacted the Delaware Division of Vocational Rehabilitation ("DVR") for the purpose of seeking employment. A representative of DVR wrote to Plaintiff's primary care physician requesting a copy of her records or "brief note regarding head injury & any related issues and/or limitations".

16.    On or about August 9, 2016 Amazon hired Plaintiff into the position of Fulfillment Associate at its Distribution Center in Middletown, Delaware. The job description for the position of Fulfillment Associate states that "[t]he ideal candidate possesses a strong work ethic, attention to detail, ability to meet deadlines, and a commitment to customer service as it relates to product fulfillment". The work environment for the job description is described as a "[v]ery fast pace environment". Amazon assigned Plaintiff to work in the AFE Department.

17.    The work Plaintiff was assigned to perform in the AFE Department involved reading an order of merchandise items on a large screen, selecting an appropriate size box, packaging the items and dunning in the box, applying the correct mailing label to the box, and then placing the box on a moving belt. Initially, Plaintiff had no trouble completing these tasks, but with more time on the job the AFE rate guideline for completed packages increased to a range of 180 to 200 packages per ten-hour shift. Plaintiff found it increasingly difficult to meet this rate over the last several hours of her

ten-hour shift.  Plaintiff expressed these concerns to her supervisor but nothing changed.

Instead she was repeatedly told that she was not meeting the rate requirement.  In early

November of 2016 Plaintiff spoke with General Manager Brian Jones who directed her to

the Human Resources ("HR") office to discuss "accommodations".

18.     On or about November 7, 2016 Plaintiff met with personnel in Amazon's HR

Department.   She again expressed her concerns about the job position in the AFE

Department.  The HR Department provided her with a number of forms for Plaintiff and

her healthcare provider to complete.  She was told to go home and not return to work until

directed to do so.

19.     On November 15, 2016, Plaintiff's primary care physician—Dr. Karla

Testa—completed and signed the medical forms Amazon had requested.   Dr. Testa

informed Amazon that Plaintiff had a permanent physical or mental impairment that

interfered with her ability to focus and concentrate in a fast-paced setting after eight hours

of work.   Dr. Testa recommended that Plaintiff be assigned to a shorter shift or,

alternatively, to a job position that required a less stressful pace over the last two to three

hours of the shift.  These medical forms were telefaxed to Amazon on November 16, 2016

at approximately 11:12 a.m.  Despite receiving this input from Plaintiff's physician Amazon

never offered to place Plaintiff in a position with a shorter shift or less stressful pace over

the last two hours of the shift.

20.     Plaintiff heard nothing further from Amazon about her request for

"accommodations" until November 30, 2016.  In the interim, Plaintiff received a notification

through the company's messaging system that she was being disciplined for not meeting

the AFE Department's rate guideline.

21.    On or about November 30, 2016, Jessica Schutzenhofer in Amazon's HR Department called Plaintiff at home to discuss "accommodations".  Ms. Schutzenhofer asked Plaintiff what kind of work she was interested in doing.  Plaintiff responded that she did not know the kind of work that was available to her and that the only other work she was familiar with at Amazon was giftwrapping.  Ms. Schutzenhofer mentioned the ICQA Department as an alternative, but Plaintiff knew nothing about the work performed in that Department.  Ms. Schutzenhofer ended the conversation by telling Plaintiff she would contact her again on Thursday, December 1, 2016.

22.    At approximately 7:00 p.m. on Thursday, December 1, 2016 Ms. Schutzenhofer called Plaintiff to tell her to report to the HR Department at 7:30 a.m. on Friday, December 2, 2016.  When Plaintiff arrived at that time Ms. Schutzenhofer offered Plaintiff a transitional work assignment ("TWA").   The TWA was for a temporary assignment as a Fulfillment Associate on a ten-hour shift in the ICQA Department beginning on December 2, 2016 and ending on February 2, 2017.  The written offer stated that "Amazon will assume that you have accepted this offer and you will begin working under the TWA on the start date listed above [December 2, 2016]", but that if Plaintiff did not accept the offer "…you must contact Accommodations or HR within two days of your receipt of this letter or the start date of your TWA, whichever is earlier".  At the time the offer was made Plaintiff had no understanding of the work she was to perform in the ICQA Department or that it was a temporary assignment.

23.    At the conclusion of the meeting with Ms. Schutzenhofer, Plaintiff was directed to go to the Learning Center, but when she arrived there she was told to report to her new assignment in the ICQA Department.  Upon her arrival in the ICQA Department

5

a male employee asked her why she was there.   When Plaintiff tried to explain the situation a female employee (whom Plaintiff believes was a supervisor or manager in the ICQA Department) informed her that according to the computer system she was still registered in the AFE Department and directed to her go back to the HR Department. Plaintiff again returned to the HR department where she was told to go home to await a further phone call.

24.     Plaintiff received no phone call during the balance of Friday, December 2, 2016.  This caused her great concern about her employment status, so on the morning of Saturday, December 3, 2016 she reported to the HR Department.  Once again, she was told to go home by a male employee who said he had not received any information about her work status from Ms. Schutzenhofer.  She was to wait for a phone call.

25.     Plaintiff received no further communication from anyone at Amazon from December 3 through December 9, 2016.  This was extremely upsetting to her.  On December 9, 2016 Plaintiff went to the DDOL to discuss these circumstances with an investigator as she did not know what else to do.

26.     On December 12, 2016 Plaintiff received an e-mail from James Digan in Amazon's HR Department informing her that her UPT time was at minus 10.00 hours and that, pursuant to company policy, she was eligible for termination.  The e-mail concluded by stating "If I do not hear back from you by Tuesday, December 13th at 3:00pm, I will acknowledge your lack of communication as your resignation".  This e-mail again caused Plaintiff a great deal of stress and anxiety.  On December 13, 2016 Plaintiff responded to Mr. Digan's e-mail by informing him that she had never missed any scheduled time from work, had never even been late to work, and had not yet been placed in a new job position.

She wrote: "I need my job, that's why I sent for help with Accommodations to assure that I could keep my job. I need to know when and what department to show up for work all I have been doing is waiting".

27.     On or about December 16, 2016 Plaintiff was directed to return to work in the ICQA Department. The job position involved inventory security where employees opened packaged boxes to ensure that the correct number and type of merchandise items had been placed in the boxes. Plaintiff received little to no training for this position. Moreover, she learned that the position had an even higher rate guideline of 600 packages per ten-hour shift. On December 17, 2016 Plaintiff submitted to the HR Department a handwritten request for a job position without a rate guideline. She received no response to this request. Plaintiff last worked in the ICQA Department on December 24, 2016.

28.     On or about December 31, 2016 Plaintiff went onto Amazon's employee website to submit a further online request for "accommodations". Again she received no response to this request.

29.     On January 6, 2017 Plaintiff sent an e-mail to Ms. Schutzenhofer expressing her frustration that the rate guideline in the ICQA Department was higher than the rate in the AFE Department and that she needed a job position that had a lower rate. She requested additional time to research and identify an appropriate position. Plaintiff noted that she had used up all her extra paid time and was about to spend her vacation time as well. She concluded the e-mail by writing: "Now I'm going through some anxiety and panic attacks which aren't good but controllable with time and therapy". Plaintiff never received a response to this e-mail communication.

7

30.     On January 10, 2017 Plaintiff received another e-mail communication from Amazon's HR Department informing her that her UPT time balance was at minus 9.00 hours and that, per company policy, she was eligible for termination.  On January 17, 2017, Plaintiff received yet another e-mail from Amazon's HR Department informing her that her UPT balance time was now at minus 49.00 hours and, once again, stated that she was eligible for termination.  These e-mail communications caused Plaintiff additional emotional distress and anxiety.

31.     On or about February 23, 2017 Plaintiff received a letter from Amazon confirming that on January 19, 2017 it had received her claim for short-term disability benefits beginning on December 31, 2016.  Plaintiff never applied for, nor did she ever intend to apply for short-term disability benefits.  Her only request was for an accommodation to her disability so she could continue working at Amazon.

32.     On or about February 22, 2017 Plaintiff returned to the DDOL for the purpose of signing and filing a Charge of Discrimination against Amazon for disability discrimination.  This followed upon the initial meeting Plaintiff had attended at DDOL on December 9, 2016.  On or about February 23, 2017, the DDOL mailed to Amazon a copy of the Charge of Discrimination.  Upon information and belief Amazon received the Charge of Discrimination within several days thereafter.

33.     On or about February 24, 2017 Plaintiff received a letter from Amazon informing her that her request for medical leave of absence and leave under the Family Medical Leave Act had been denied.  Again, Plaintiff never applied for, nor did she ever intend to apply for, any leave of absence benefits.  The letter went on to state that if she required an accommodation she was to "contact the Leave of Absence and

8

Accommodations (LOAA) team". This letter caused Plaintiff additional stress and anxiety as she had been requesting "accommodations" since November 7, 2016.

34.     On or about March 3, 2017, Plaintiff received a letter from Amazon informing her that her claim for short-term disability (STD) benefits had been denied. Again, Plaintiff never applied for, nor did she ever intend to apply for, short-term disability (STD) benefits.

35.     On or about April 23, 2017, Plaintiff submitted an application for unemployment insurance benefits, as she had received no income since December 24, 2016 and no response to her repeated requests for "accommodations". Amazon responded to this application by claiming that Plaintiff was still employed by Amazon and was currently on medical leave. Based on this false statement Plaintiff's application for unemployment insurance benefits was denied in a Notice of Determination dated May 16, 2017. Plaintiff took a timely appeal from the Notice of Determination. A hearing on her appeal was scheduled for June 12, 2017. Despite receiving notice of this hearing no one from Amazon appeared to defend the appeal. The decision to deny Plaintiff unemployment insurance benefits was reversed in a Referee's Decision dated June 14, 2017.

36.     The process employed by Amazon to respond to Plaintiff's request for a reasonable accommodation beginning on November 7, 2016 created for Plaintiff an extreme degree of frustration, anxiety, sleeplessness, panic attacks, and sense of hopelessness. As a result Plaintiff has sought medical care and treatment.

37.     Plaintiff has received no offer of employment from Amazon since December 24, 2016.

## COUNT I
## ADA DISCRIMINATION CLAIM

38.     Plaintiff hereby incorporates the allegations set forth in paragraphs 1 through 37 above as if fully restated herein.

39.     At all times relevant hereto, Plaintiff was disabled within the meaning of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §12102(2)(A).

40.     At all times relevant hereto, Amazon was an employer within the meaning of the ADA, 42 U.S.C. §12111(5).

41.     At all times relevant hereto, Plaintiff was otherwise qualified to perform the essential functions of the job position of Fulfillment Associate with or without a reasonable accommodation.

42.     Plaintiff requested a reasonable accommodation for her disability.

43.     Amazon discriminated against Plaintiff on the basis of her disability in violation of the ADA, by denying her request for an accommodation and thereafter discharging her from her employment.

44.     Amazon further discriminated against Plaintiff and violated the ADA by failing or refusing to engage in a meaningful interactive process as mandated by the ADA.

45.     Amazon further violated the ADA by intentionally and willfully terminating Plaintiff's employment on the basis of her disability.

46.     As a direct and proximate result of Amazon's statutory violations Plaintiff suffered injury and a deprivation of her federal rights for which she seeks compensation in the form of compensatory damages for her physical pain and suffering, emotional pain and suffering, mental anguish, and humiliation, special damages, punitive damages, back pay, front pay, attorneys' fees, expert witness fees, pre- and post-judgment interest, and the costs of this action.

## COUNT II
## ADA RETALIATION CLAIM

47. Plaintiff hereby incorporates the allegations set forth in paragraphs 1 through 46 above as if fully restated herein.

48. At all times relevant hereto, Plaintiff was disabled within the meaning of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §12102(2)(A).

49. At all times relevant hereto, Amazon was an employer within the meaning of the ADA, 42 U.S.C. §12111(5).

50. At all times relevant hereto, Plaintiff was otherwise qualified to perform the essential functions of the job position of Fulfillment Associate with or without a reasonable accommodation.

51. Plaintiff requested a reasonable accommodation for her disability, an activity protected by the ADA. Amazon retaliated against Plaintiff by discharging her from her employment and opposing her claim for unemployment insurance benefits on false or fictitious grounds.

52. As a direct and proximate result of Amazon's statutory violations Plaintiff suffered injury and a deprivation of her federal rights for which she seeks compensation in the form of compensatory damages for her physical pain and suffering, emotional pain and suffering, mental anguish, and humiliation, special damages, punitive damages, back pay, front pay, attorneys' fees, expert witness fees, pre- and post-judgment interest, and the costs of this action.

## COUNT III
## DELAWARE DISABILITY DISCRIMINATION CLAIM

53.     Plaintiff hereby incorporates the allegations set forth in paragraphs 1 through 52 above as if fully restated herein.

54.     Delaware's Persons with Disabilities Employment Protection Act, 19 *Del. C.* §720, *et seq.* ("the Act"), prohibits an employer from discriminating against an employee on the basis of the employee's disability.

55.     At all times relevant hereto, Plaintiff was a person with a disability within the meaning of 19 *Del. C.* §722(4).

56.      At all times relevant hereto, Amazon was an employer which employed Plaintiff within the meaning of 19 *Del. C.* §722(3).

57.     Amazon unlawfully discriminated against Plaintiff on the basis of her disability in violation of 19 *Del. C.* §724.

58.     As a direct and proximate result of Amazon's statutory violations Plaintiff suffered injury and a deprivation of her statutory rights for which she seeks compensation in the form of compensatory damages for her physical pain and suffering, emotional pain and suffering, mental anguish, and humiliation, special damages, punitive damages, back pay, front pay, attorneys' fees, expert witness fees, pre- and post-judgment interest, and the costs of this action.

## COUNT V
## DELAWARE RETALIATION CLAIM

59.     Plaintiff hereby incorporates the allegations set forth in paragraphs 1 through 58 above as if fully restated herein.

60.     19 *Del. C.* §726 prohibits an employer form discriminating against a person a disability because the person has participated in proceedings to enforce the provisions of the Act.

12

61.     At all times relevant hereto, Plaintiff was a person with a disability within the meaning of 19 *Del. C.* §722(4).

62.     At all times relevant hereto, Amazon was an employer which employed Plaintiff within the meaning of 19 *Del. C.* §722(3).

63.     On or about December 9, 2016 Plaintiff went to the DDOL to file a discrimination complaint.  On or about February 22, 2017 Plaintiff returned to the DDOL for the purpose of signing and filing a Charge of Discrimination against Amazon.  Upon information and belief Amazon received its copy of the Charge of Discrimination within several days after it was mailed to it.

64.     Amazon retaliated against Plaintiff by discharging her from her employment and opposing her claim for unemployment insurance benefits on false or fictitious grounds.

65.     As a direct and proximate result of Amazon's statutory violations Plaintiff suffered injury and a deprivation of her statutory rights for which she seeks compensation in the form of compensatory damages for her physical pain and suffering, emotional pain and suffering, mental anguish, and humiliation, special damages, punitive damages, back pay, front pay, attorneys' fees, expert witness fees, pre- and post-judgment interest, and the costs of this action.

### COUNT V
### BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

66.     Plaintiff hereby incorporates the allegations set forth in paragraphs 1 through 65 above as if fully restated herein.

67.     Every contact for employment in the State of Delaware carries with it an implied covenant of good faith and fair dealing.

13

68.     Defendant breached the implied covenant of good faith and fair dealing by:

(a)     terminating Plaintiff's employment or discharging her without any credible or justifiable basis in fact;

(b)     falsified, manipulated or created a basis for terminating Plaintiff's employment or discharging her that was not based in fact;

(c)     abandoned, ignored, or dismissed her during the period of time that she was requesting a reasonable accommodation for her disability;

(d)     directed inaccurate or baseless communications accusing her of violating the company's attendance policy;

(e)     submitted to a government agency false, fictitious or baseless grounds for opposing her lawful claim for unemployment insurance benefits; and,

(f)     otherwise breached the covenant as further discovery may demonstrate.

69.     As a direct and proximate result of Defendant's conduct, Plaintiff has suffered, and will continue to suffer in the future, mental anguish, emotional distress, extreme frustration, anxiety, panic attacks, humiliation and upset.

70.     As a further direct and proximate result of Defendant's conduct, Plaintiff has suffered a diminution in and loss of income.

71.     As a further direct and proximate result of Defendant's conduct Plaintiff has incurred, and will incur in the future, the costs and expenses associated with the prosecution of this action, including but not limited to her attorneys' fees.

**WHEREFORE**, Plaintiff Glendora D. Barksdale demands judgment in her favor and against defendant Amazon.com.dedc LLC, and prays that this Court:

14

(a)    enter judgment against Amazon.com.dedc LLC;

(b)    enter a declaratory judgment declaring that the acts of defendant Amazon.com.dedc LLC violated Plaintiff's federal and State rights;

(c)    enter a judgment against defendant Amazon.com.dedc LLC for compensatory damages, including compensation for lost wages, back pay, front pay, lost employment benefits, and other economic losses, physical pain and suffering, emotional pain and suffering, mental anguish and humiliation;

(d)    enter a judgment against defendant Amazon.com.dedc LLC for punitive damages;

(e)    award Plaintiff her reasonable attorneys' fees;

(f)    award Plaintiff her expert witness fees;

(g)    award pre-judgment and post-judgment interest as appropriate;

(h)    award the costs of this action;

(i)    enter an Order for such other further relief as the Court deems just and proper under the circumstances of this action.

**TYBOUT, REDFEARN & PELL**

By: _____
DAVID G. CULLEY (#2141)
750 Shipyard Drive, Suite 400
Wilmington, DE  19801
(302) 658-6901
dculley@trplaw.com
*Attorneys for Plaintiff*

15